UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

AARON D. WINDOM,

    Plaintiff,

    v.      CAUSE NO. 3:20-CV-769-MGG

ANDREW LIAW,

    Defendant.

OPINION AND ORDER

Aaron D. Windom, a prisoner without a lawyer, is proceeding in this case "against Andrew Liaw in his individual capacity for compensatory and punitive damages for denying him medical treatment for the broken middle finger on his right hand from April 2020 through September 2020 knowing it would result in the finger healing improperly and being deformed in violation of the Eighth Amendment[.]" ECF 24 at 5. Dr. Liaw filed a motion for summary judgment. ECF 97. Windom filed a response, and Dr. Liaw filed a reply. ECF 101, 103. The summary judgment motion is now fully briefed and ripe for ruling.

The parties provide evidence showing the following facts: Around April 17, 2020, Windom injured his hand after striking another person during an altercation at Pendleton Correctional Facility. ECF 97-1 at 25-27. Approximately fifteen minutes after the altercation, his hand began to swell and showed bruising. *Id.* at 26-27. He saw medical staff that same day, where it was noted he had edema on his top right hand

approximately the size of a plum. *Id.* at 136. He was provided ice and Tylenol. *Id.* On April 20, 2020, Windom tested positive for COVID-19 and was placed on quarantine for approximately one month. *Id.* at 31, 54.

On April 21, 2022, a physician assistant met with Windom and observed his hand. ECF 97-1 at 137-40. She submitted an outpatient request for Windom to receive an orthopedic consultation and x-rays due to a suspected metacarpal fracture. *Id.* She did not recommend that Windom's hand be casted, and instead instructed him to rest, ice, compress, and elevate his hand and purchase pain medication from the commissary as needed. *Id.* at 138.

On April 22, 2022, Dr. Robert Mehl reviewed x-rays of Windom's right hand. ECF 85 at 19. Dr. Mehl noted the images demonstrated an impaction fracture at the base of the third metacarpal with volar angulation distal fragment subtending an angle of 30 degrees. *Id.* His impression was a "subacute fracture proximal third metacarpal as described." *Id.*

On April 22, 2022, Windom was transferred to Westville Correctional Facility ("WCF"). ECF 97-1 at 141-46. Upon his arrival at WCF, he spoke with a nurse regarding his right hand injury and stated he was in pain and needed to see a doctor. *Id.* at 45-46. At that time, he was wearing an elastic bandage on his right hand. *Id.* at 46. Windom saw nursing staff again either that evening or the next night, and continued to see them daily for the next few days due to his COVID diagnosis. *Id.* at 48-49. He was regularly provided Tylenol his first few days at WCF. *Id.* at 50.

On April 23, 2020, a nurse provided Windom a healthcare request form to request a provider visit, which he submitted the next day. ECF 97-1 at 49-50; ECF 13-1 at 7. On April 24, 2020, Nurse Dorothy Livers responded to the healthcare request, stating a provider had been contacted and his hand should be iced and elevated. ECF 13-1 at 7. It is unclear which provider was contacted by Nurse Livers. *Id.*; ECF 97-1 at 72.

On April 28, 2020, Dr. Liaw reviewed portions of Windom's medical records and issued an addendum regarding his right hand. ECF 97-1 at 150; ECF 80 at 3. Dr. Liaw noted Windom appeared to have a base third metacarpal fracture and that, per nursing, his hand remained in an elastic bandage. ECF 97-1 at 150. Dr. Liaw noted an orthopedic evaluation had been requested by the transferring prison facility, and that, once approved, the orthopedic specialist could review the x-rays and make recommendations. *Id.*

On May 4, 2020, Dr. Liaw entered a chart update that the request for an orthopedic consultation had been approved. ECF 97-1 at 151-52. Because Windom had tested positive for COVID-19, he was scheduled for a telehealth appointment. *Id.* Dr. Liaw ordered additional x-rays in advance of the orthopedic consultation. *Id.* at 153.

On May 7, 2020, Windom's repeat x-rays were read by Dr. Mehl. ECF 85 at 14. The images showed an oblique fracture at the base of the third metacarpal with no change in position or alignment compared to the previous x-rays. *Id.* The carpal elements were in anatomic alignment and the joint spaces appeared intact. *Id.* Dr. Mehl's impression was "[e]arly changes of healing base" of the fracture and no complication compared to the previous x-rays. *Id.*

3

On May 8, 2020, Windom was seen by orthopedic specialist Dr. Ferlic for a telehealth appointment. ECF 97-1 at 159-60. After reviewing the x-rays and speaking with Windom, Dr. Ferlic did not prescribe any medications or recommend surgery, casting, or splinting. *Id.* at 68, 159-60; ECF 85 at 17. Instead, he ordered that X-rays be repeated in approximately three weeks for a determination as to surgical intervention. *Id.*

On June 8, 2020, Windom received follow-up x-rays. ECF 85 at 10. On June 12, 2020, Windom had a second telehealth visit with Dr. Ferlic. ECF 97-1 at 156, 158-59. Dr. Ferlic noted Windom's x-rays revealed early consolidation with favorable progress both clinically and radiographically. *Id.* Windom was not able to make a full fist at this appointment, but his hand and wrist flexibility had mostly returned. *Id.* at 77. Dr. Ferlic believed Windom's hand was healing perfectly on its own and did not require surgery, casting, or physical therapy. *Id.* at 74, 156, 158-59. He instead instructed Windom to avoid aggressive grip or impact with his hand for four to six weeks to reduce the chance of re-injury. *Id.* Dr. Ferlic believed the hand would be fully healed within a week or so. *Id.* at 156. Windom had no complaints of pain during this visit. *Id.* He continued to use the elastic bandage until the end of August. *Id.* at 79.

On September 21, 2020, Windom was seen by a nurse in response to a healthcare request regarding right hand pain. ECF 52-1 at 104-06. The nurse noted a raised lump on top of Windom's hand with stiffness and pain. *Id.* She referred Windom to a physician. *Id.* However, three days later, Windom was transferred from WCF to Wabash Valley Correctional Facility where he was no longer under the care of Dr. Liaw.

4

*Id.* at 97. Because neither party disputes these facts, the court accepts them as undisputed.

Dr. Liaw argues summary judgment is warranted in his favor because he provided constitutionally adequate treatment for Windom's hand by ordering x-rays, referring him to an orthopedic specialist, and following the treatment recommendations of the specialist. ECF 98 at 10-13. In his response, Windom argues Dr. Liaw provided constitutionally inadequate care by failing to cast his hand, prescribe him pain medication, and timely schedule him for an orthopedic consultation. ECF 101.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Where the defendants have provided some level

of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Here, the undisputed facts show Windom received constitutionally adequate care for his right hand injury. Specifically, it is undisputed that: (1) Windom broke his hand at his prior prison facility on April 17, 2020, and was given an elastic bandage, instructed to purchase Tylenol if he desired, and referred for an orthopedic consultation; (2) Windom arrived at WCF on April 22, 2020, and was given Tylenol for several days; (3) Windom was seen by nurses the first few days at WCF, and Dr. Liaw first reviewed his records on April 28, 2020; (4) Windom was approved for an orthopedic consultation on May 4, 2020, and Dr. Liaw ordered x-rays in advance of the consultation; (5) Windom saw an orthopedic specialist on May 8, 2020, who did not recommend any specific treatment and instructed that x-rays be repeated in three weeks; (6) follow-up x-rays were performed on June 8, 2020, which showed Windom's hand was healing perfectly on its own; (7) Windom had a follow-up orthopedic consultation, where the orthopedic specialist concluded Windom did not require any treatment and his hand would heal on its own; and (8) Windom did not complain about his right hand again until September 21, 2020, and was referred to a provider before

6

being transferred three days later to a different prison facility. Thus, it is undisputed Dr. Liaw treated Windom's right hand by ordering x-rays, referring him to a specialist, and following the recommendations of the specialist. In response, Windom provides no evidence this treatment was "plainly inappropriate." *See Hayes*, 546 F.3d at 524. Windom opines that Dr. Liaw should have put his hand in a cast, but this amounts to a demand for specific care. *See Forbes*, 112 F.3d at 267. Moreover, it is undisputed the orthopedic specialist did not recommend that Windom's hand be casted and opined that it would heal perfectly on its own. Windom also argues Dr. Liaw should have prescribed him pain medication, but he provides no evidence he ever requested or required pain medication and it is undisputed he was provided some Tylenol and able to purchase more from the commissary. Lastly, Windom argues Dr. Liaw delayed in scheduling him for an orthopedic consultation, but it is undisputed the request for the consultation was placed before Windom even arrived at WCF and there is no evidence Dr. Liaw was responsible for any delay in approving or scheduling the consultation. Thus, Dr. Liaw has provided undisputed evidence he provided constitutionally adequate care for Windom's right hand injury, and Windom provides no evidence by which a reasonable jury could conclude this treatment was plainly inappropriate. Summary judgment is therefore warranted in favor of Dr. Liaw.

    For these reasons, the court:

    (1) GRANTS Dr. Liaw's motion for summary judgment (ECF 97); and

    (2) DIRECTS the clerk to enter judgment in favor of Dr. Liaw and against Aaron D. Windom and to close this case.

SO ORDERED on February 22, 2023

>
> s/Michael G. Gotsch, Sr.
> Michael G. Gotsch, Sr.
> United States Magistrate Judge